RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 8/19/11

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| HERSHEL EMEAL CORLEY | CIVIL ACTION NO. 10-786 |
| VERSUS | JUDGE TRIMBLE |
| SOUTHEASTERN METALS MANUFACTURING CO., INC. | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendant Southeastern Metals Manufacturing Company, Inc. ("SEMCO").[1] For the reasons expressed herein below, the court finds that the motion should be GRANTED.

### I. BACKGROUND

Plaintiff was hired by Hart & Cooley, Inc. ("H&C"), a Michigan corporation that manufactured, among other things, a device to protect gutters from clogging and debris called the "Gutter Helmet." Ostensibly as part of his new hire paperwork, plaintiff signed an "Inventions/Confidentiality/Noncompetition/Software Agreement" ("H&C Agreement") on October 10, 2002 in Holland, Michigan.[2]

The Gutter Helmet division of H&C was purchased by defendant SEMCO in September of 2005.[3] Plaintiff became a SEMCO employee during this acquisition and was made SEMCO's

---

[1] R. 15.
[2] "Inventions/Confidentiality/Noncompetitions/Software Agreement" filed as "Attachment 3" to Affidavit of Gary Henry [R. 15-3 at pp. 10].
[3] Affidavit of Phil Renda [R. 15-3 at pp. 11-13].

1

Western Region Sales Manager for Gutter Helmet sales and marketing.[4] Plaintiff continued in this role until he resigned on or about December 6, 2009.[5] Shortly thereafter, on or about January 4, 2010, plaintiff became an employee of Truss Building Products, LLC ("Truss").[6]

By letter dated January 21, 2010, SEMCO, through its attorneys, contacted Truss and advised that

> it is [SEMCO's] understanding that Mr. Corley, as an employee of [Truss], is contacting and meeting with dealer/customers to whom he sold product for [SEMCO] and attempting to induce [them] to purchase Snap-Lock product from Truss. Mr. Corley must immediately cease and desist from any and all such communications, meetings and related conduct effective immediately.
> As you may know and/or should know, as a condition of his employment by Gutter Helmet's predecessor, Mr. Corley executed an Inventions/Confidentiality/Noncompetition/Software Agreement...on or about October 10, 2002. This agreement is in effect and enforceable today.[7]

After consulting with its own attorneys, Truss terminated plaintiff's employment "effective immediately until the enforceability of this Agreement is resolved or until June 24, 2010, the day after his 6 month restriction period as set forth in your letter..."[8] Truss specified that plaintiff's termination was based "solely upon the demand of SEMCO contained in your letter and is not a result of any of his activities while employed by Truss."[9]

---

[4] Id. at ¶ 8.
[5] Plaintiff's original complaint R. 1-1 at ¶ 3.
[6] Id.
[7] Letter from SEMCO's attorney Amy Habib Rittling of 1/21/2010 to Karl Gramling, President of Truss, filed as "Attachment 1" to the Affidavit of Phil Renda [R. 15-3 at pp. 14-15].
[8] Letter from Truss' attorney Terrence J. Martin, Sr., filed as attachment to plaintiff's original complaint [R. 1-1 at pp. 16-20].
[9] Id.

Plaintiff filed suit against SEMCO in the Ninth Judicial District Court for the Parish of Rapides, State of Louisiana on or about April 14, 2010.[10] SEMCO removed the suit to this federal district court by notice of May 14, 2010.[11]

Plaintiff's suit alleges "intentional and tortuous /sic/ interference with [plaintiff's] employment contract with Truss" and seeks damages representing loss of employment, pain, mental and emotional suffering, general damages, attorney fees and expenses, as well as costs of the litigation.[12] Plaintiff amended his complaint on June 10, 2010 to add an additional defendant

> whose name is presently unknown to petitioners, but is designated ABC, the company official or director of SEMCO who initiated the complaint to its legal counsel which resulted in the demands made of behalf of SEMCO and ABC in the letter dated January 21, 2010...[13]

SEMCO filed a counterclaim against plaintiff along with its answer to the suit on May 21, 2010.[14] SEMCO's counterclaim seeks recovery of all attorney fees, litigation and related costs associated with the defense of plaintiff's suit.[15]

Now before the court is a motion for summary judgment filed by SEMCO, seeking dismissal of plaintiff's entire suit on the bases that (1) plaintiff has failed to articulate an actionable claim for tortious interference with contract under Louisiana law, (2) to the extent that plaintiff alleges tortious interference with business relations, such claim is unsupported by prima facie evidence, (3) plaintiff is not entitled to damages in this case and (4) any claims against SEMCO company official or director "ABC" are now prescribed as a result of plaintiff's failure to further name such defendant with specificity.

---

[10] R. 1-1.
[11] Id.
[12] Id. at ¶ 4.
[13] Plaintiff's amending and supplemental complaint [R. 6] at ¶ 23.
[14] R. 5. The court notes that SEMCO's instant motion does not seek summary judgment as to its counterclaim and, accordingly, we do not reach those issues in this ruling.
[15] Id. at ¶¶ 24-25.

3

## II. APPLICABLE STANDARD

As recently amended, Fed. R. Civ. P. 56(a) provides, in part, that

> [t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[16]

Once the movant makes such a showing, the burden shifts to the nonmoving party to show that summary judgment is not appropriate by pointing to specific factual allegations which, when taken as true by the court for purposes of the motion, demonstrate that a genuine issue remains for trial.[17] An issue is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[18]

All evidence produced in support of or in opposition to the motion must be of the sort which would be admissible at the trial of the merits.[19] The court will construe the evidence in the light most favorable to the nonmoving party in that, when faced with specific factual averments by the nonmoving party that contradict specific factual averments by the movant, the court will deny summary judgment.

When confronted with a motion for summary judgment, the nonmoving party may not successfully preserve its claim by resting on the pleadings, but instead, must offer evidence in the form of affidavits, deposition testimony, answers to interrogatories and documents supporting such specific factual allegations.[20] Conclusory allegations unsupported by evidence will not suffice. The nonmoving party must demonstrate more than some "metaphysical doubt"

---

[16] Fed. R. Civ. P. 56 was amended, effective December 1, 2010, but such amendment did not make substantive changes to the summary judgment standard. See advisory committee comments to Rule 56 (2010 amendments).
[17] Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986);
[18] Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011) citing Anderson, 477 U.S. at 248.
[19] Fed. R. Civ. P. 56(c)(2).
[20] Fed. R. Civ. P. 56(c)(1).

as to the material facts.[21] Where the record, taken as a whole could not support a rational trier of fact's finding for the nonmoving party, there is no genuine issue for trial.[22]

### III. ANALYSIS

Defendant's motion first asserts that plaintiff's claim against SEMCO for interference with his employment contract with Truss is not cognizable as a tortious interference claim under Louisiana law. Defendant cites <u>Restivo v. Hanger Prosthetics & Orthotics, Inc.</u>,[23] a 2007 decision by the U.S. District Court for the Eastern District of Louisiana, as authority recognizing that applicable jurisprudence following the seminal case <u>9 to 5 Fashions v. Spurney</u>,[24] in which the Louisiana Supreme Court first recognized a cause of action for tortious interference with contract, has carefully restricted such claims to actions against a corporate officer for violation of his own duty to refrain from interference with contractual relations between his employer and some third party. Defendant also points out that such claim does not lie as against a corporate entity.

Plaintiff argues that <u>Spurney</u> should not be interpreted as the final word on what may fairly be considered a cognizable intentional interference claim in Louisiana. Plaintiff points to the Louisiana Fourth Circuit Court of Appeal's decision in <u>Neel v. Citrus Lands of Louisiana, Inc.</u>[25] in support of this argument. In <u>Neel</u>, the Louisiana Fourth Circuit rejected a trial court's grant of summary judgment in favor of defendant Citrus Lands of Louisiana based on that court's narrow application of <u>Spurney</u>. Specifically, the appellate court found that plaintiff, an employee of both Citrus Lands and EuroAmerican, a mineral leaseholder as to certain property owned by Citrus Lands, was entitled to maintain a tortious interference with contract claim

---

[21] <u>Matsushida Elec. Indus. Co. v. Zenith Radio Corp.</u>, 477 U.S. 242 (1986).
[22] <u>Id.</u>
[23] 483 F.Supp.2d 521 (E.D. La. 2007).
[24] 538 So.2d 228 (La. 1989).
[25] 629 So.2d 1299 (La. App. 4 Cir. 1993).

5

against Citrus Lands based on plaintiff's allegation that Citrus Lands barred plaintiff from entry to EuroAmerican's leasehold, thereby causing plaintiff to be fired from his job at EuroAmerican. Addressing the Spurney ruling, the Fourth Circuit stated that

> throughout the opinion there is the strong implication that the court recognized that the Louisiana law of intentional interference with contractual relationships should be far broader than the narrow facts before the court...although less broad than the amorphous law of some jurisdictions that seemed insusceptible of definition and reasonable limitation.[26]

While the court agrees that Neel represents a different view as to the breadth of the intentional interference with contract claim in Louisiana law, we find that the Louisiana Fourth Circuit's very recent ruling in Favrot v. Favrot[27] expresses retreat from this view and a return to the more stringent view of Spurney generally adopted by the remainder of Louisiana's appellate courts. In that case, plaintiff was a former employee of his father's architectural firm and brought suit against his brother for, inter alia, tortious interference with contract, alleging that his brother was responsible for his termination from the firm. Though the claim at issue in Favrot concerned an at-will employment contract, the court defined the parameters of the tortious interference claim according to Spurney and reiterated that "this kind of claim is restricted to one 'against a corporate officer for intentional and unjustified interference with contractual relations.'"[28] The Favrot court also instructed that an at-will employee "simply has no 'legally protected interest in his employment necessary for a claim of tortious interference with a contract.'"[29]

Given that the great weight of jurisprudence declines to expand the tortious interference with contract claim in the manner urged by plaintiff, this court, recognizing its duty to render an

---

[26] Id. at 1301.
[27] 2011 WL 458708 (La. App. 4 Cir. 2/9/11).
[28] Id. at *10-11.
[29] Favrot, 2011 WL at *10 quoting Durand v. McGaw, 635 So.2d 409, 411 (La. App. 4 Cir. 1994).

6

informed guess as to how Louisiana's Supreme Court would rule in any matter governed by state law, declines to venture outside the closely guarded limits of the cause of action narrowly crafted by the state's high court.[30] Accordingly, the court finds that defendants' motion for summary judgment should be granted as to plaintiff's purported tortious interference claim and such claim should be denied and dismissed with prejudice.

Defendants point out that plaintiff has yet to specify the identity of the defendant named to the suit as "ABC" and described only as "the company official or director of SEMCO who initiated the complaint to its legal counsel which resulted in the demands made on behalf of SEMCO and ABC in the letter dated January 21, 2010..."[31] Plaintiff does not address this argument in his opposition to the motion. As stated above, plaintiff's suit was filed on April 14, 2010. Since that date, now more than one year ago, no further identification of defendant ABC has been made in this case. Plaintiff has had an ample length of time to conduct discovery which might have revealed the true identity of the defendant at issue. Plaintiff has made no service on ABC and ABC has made no appearance in the suit. For these reasons, we find that ABC was never a party to the suit and that any purported claims against ABC for tortious interference with contract or with business relations, which plaintiff asserts occurred in January of 2010, have prescribed pursuant to La. Civ. C. Arts. 3492.[32]

Defendants' motion further asserts that, to the extent that plaintiff alleges tortious interference with business relations, such claims should also fail because plaintiff neither alleges

---

[30] Erie R. Co. v. Tompkins, 304 U.S. 64 (1938); Gasperini v. Center for Humanities, Inc., 518 U.S. 415 (1996).
[31] R. 6 at ¶ 23.
[32] Nagle v. Lee, 807 F.2d 435 (5th Cir. 1987) (district court did not need to specifically dispose of purported claims against defendant "ABC Insurance Company" because such defendant was never adequately identified in the suit, made no appearance and, therefore, was never a true party to the suit); SMP Sales Management, Inc. v. Fleet Credit Corp., 960 F.2d 557 (5th Cir. 1992) (under Louisiana law tortious interference with contract is a tort subject to liberative prescriptive period of one year).

nor demonstrates requisite malice by defendants in this case.[33] We have reviewed plaintiff's complaint and find that no claim for intentional interference with business relations is made. Plaintiff does not refute defendants' argument and points to no allegations which may be construed as such a claim.

Defendants' motion also asserts that plaintiff fails to allege violation of Louisiana's Unfair Trade Practices Act ("LUTPA"). While the court agrees that plaintiff's complaint is vague as to a specific LUTPA claim, we will assume for the sake of this motion that such claim is adequately stated therein.[34]

Plaintiff contends that defendants committed "improper, unlawful, outrageous, deliberate, malicious actions" when SEMCO, through its counsel, sent the January 2010 letter to Truss and that its complaint fairly informed SEMCO of its allegations under the LUTPA.[35] Plaintiff contends that the H&C Agreement was revoked by the subsequent issuance of SEMCO's Employee Handbook ("Handbook") and, further, that defendants produce no evidence that plaintiff ever disclosed any confidential or proprietary information while working for Truss.[36]

The LUTPA declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[37] In order to maintain a cause of action under the LUTPA, plaintiff must demonstrate that defendant SEMCO engaged in an unfair or deceptive trade practice causing ascertainable loss of money or property to plaintiff.[38] Although the LUTPA was previously interpreted to provide a cause of action only to consumers or business competitors, the Louisiana Supreme Court recently clarified that any person who

---

[33] R. 15-2 at pp. 8-19.
[34] R. 1-1.
[35] R. 17 at pp. 12-14.
[36] Id. at pp. 4-9.
[37] La. R. S. 51:1405.
[38] Cheramie Services, Inc. v. Shell Deepwater Production, Inc., 35 So.3d 1053 (La. 2010); Who Dat Yat LLC v. Who Dat? Inc., 2011 WL 39043 (E.D. La. 2011).

8

asserts a "loss of money or ...property...as a result of the use or employment by another person of an unfair or deceptive method, act, or practice" has standing to bring such claim under the statute.[39] Whether or not a particular conduct constitutes an unfair act or practice is a determination to be made by the court in each case.[40]

Violations of the LUTPA involve "fraud, misrepresentation, deception or unethical conduct."[41] Plaintiff's only allegation of wrongdoing against defendant SEMCO is that SEMCO caused to be sent a letter, through its counsel, threatening Truss and plaintiff with legal action based on the H&C Agreement. Plaintiff asserts that the H&C Agreement was not valid because of subsequent revocation and, for that reason, SEMCO's threat of legal action was "immoral, unethical, oppressive [and] unscrupulous."[42] The court disagrees as a matter of law.

A party may threaten to avail itself of any legal right and, in doing so, does not foment undue duress unless the right is abused or the threat of action made in bad faith.[43] Though it may be eventually learned or proven that the threatening party possesses no such legal right, the threat of legal action is still proper unless it is proven that the threatening party lacked a reasonable belief that the cause of action existed at the time the threat was made.[44]

Plaintiff makes two arguments that may be construed as alleging a lack of requisite reasonable belief by SEMCO. First, plaintiff argues that, since the H&C Agreement upon which

---

[39] Cheramie, 35 So.2d at 1058.
[40] American Waste & Pollution Control, Inc. v. Browning-Ferris, Inc., 949 F.2d 1384, 1391 (5th Cir. 1991) citing Roustabouts, Inc. v. Hamer, 447 So.2d 543, 548 (La. App. 1 Cir. 1984) and Moore v. Goodyear Tire and Rubber Co., 364 So.2d 630, 633-34 (La. App. 2 Cir. 1978).
[41] Glod v. Baker, 899 So.2d 642, 649-50 (La. App. 3 Cir. 2005) citing JCD Mktg. Co. v. Bass Hotels & Resorts, Inc., 812 So.2d 834 (La. App. 4 Cir. 2002).
[42] R. 17 at p. 14.
[43] Storey v. Stanton, 162 So. 649 (La. 1935); Alamo Amusement Co. v. Harcol Motion Picture Industries, 147 So. 114 (La. App. 1933); Bradford v. Brown, 11 Mart. (o.s.) 217 (La. 1822); Cooper v. Southern Hunting Products, Ltd., 891 So.2d 91 (La. App. 2 Cir. 2004).
[44] Southmark Properties v. Charles House Corp., 742 F.2d 862 (5th Cir. 1984).

SEMCO based its assertion of legal rights was revoked by SEMCO's Handbook,[45] SEMCO could not have had a reasonable belief that the agreement was actionable. Moreover, plaintiff argues that SEMCO's Handbook did not address the issue of competition and instead prohibited "[m]isappropriation or disclosure of confidential or proprietary information of the Company..." and "unauthorized or misuse of Company business systems..."[46]

SEMCO denies that the issuance of its Handbook in 2010 modified or revoked the prior H&C Agreement, arguing instead that such agreement was part of the assets of the H&C Gutter Helmet Division that were transferred to SEMCO upon its purchase of that division.[47] SEMCO argues that Louisiana courts do not generally view employee handbooks as contracts such as would alter the conditions of an at-will employment relationship.[48] SEMCO also argues that Florida law holds that employee handbooks do not provide contract rights unless explicitly stated.[49]

SEMCO points out the following language from the 2010 Handbook:

> This handbook will tell you about Southeastern Metal Mfg. Co., Inc., its policies and the benefits available to you as a part of our team. It also provides a summary of what we expect from you as an employee and what you can expect from us...The policies of this handbook are to be considered guidelines and a convenient source of information. **As such, they are not to be interpreted or construed as an expressed or implied contract.**[50]

---

[45] Plaintiff signed a "Receipt of Employee Handbook (Acknowledgement)" on September 25, 2010. R. 17-3 at p. 64. The H&C Agreement was executed on October 10, 2002. R. 15-3 at p. 10.
[46] R. 17-3 at p. 58.
[47] R. 18 at p. 3.
[48] Id. at p. 2.
[49] Id. at p. 2. We note that neither party argues for the applicability of Florida law in this case and we find no basis for its application here.
[50] Id. at p. 3 citing Handbook [R. 17-3] (emphasis added).

SEMCO further points out that the Acknowledgement, signed by plaintiff, states that the signatory "recognize[s] that the provisions outlined in this handbook do not represent a contractual agreement..."[51]

Plaintiff argues that the Handbook had the effect of revoking the prior H&C Agreement as evidenced by the following language: "this Employee Handbook takes precedence over, supercedes /sic/ and revokes any previous memo, bulletin, policy or procedure issued prior to the date occurring below."[52]

The court finds that the Handbook is not a contract and does not have the effect of revoking prior contracts executed between H&C employees and their former employer. We find ample support for this conclusion in both jurisprudence and common sense. In <u>Adams v. Autozoners, Inc.</u>,[53] the U.S. District Court for the Eastern District of Louisiana, applying Louisiana law, found that the employee handbook at issue in that case was not a contract under Louisiana law and was "merely a unilateral statement by AutoZone of its policies and procedures." As is true in the instant case, the handbook at issue in <u>Adams</u> contained a disclaimer stating that "...under no circumstances can this Handbook create a contract of employment..."[54] Following the lead of the Louisiana Supreme and appellate courts, as well as the U.S. Fifth Circuit Court of Appeals, the <u>Adams</u> court found that the AutoZone handbook did not represent a contract and did not create or alter contractual rights.[55]

Similarly, common sense provides that, if all prior agreements were revoked by the Handbook, no employee of H&C would be employed by SEMCO unless each and every contract of employment was renegotiated and perfected anew. Plaintiff does not aver, nor can this court

---

[51] <u>Id.</u> at pp. 3-4.
[52] R. 17 at p. 6 citing Handbook.
[53] 1999 WL 744039 (E.D. La. 1999).
[54] <u>Id.</u> at *7.
[55] <u>Id.</u> (citations omitted).

believe, that SEMCO's purchase of H&C's Gutter Helmet Division resulted in the severing of all employment relationships, leaving that division unstaffed until such time as SEMCO had each employee sign a Handbook Acknowledgement. Moreover, the Handbook contains no information as to what each position each employee would hold or how much they would be paid for their work under SEMCO. Were we to find, as urged by plaintiff, that the SEMCO Handbook revoked all prior contracts, rather than the policies and procedures as stated, we would also have to find that no employment contracts existed outside of this Handbook. Plaintiff presents no evidence that this is true.

Given our finding that the H&C Agreement constituted a contract unaltered by SEMCO's subsequent Handbook, we reject plaintiff's argument that revocation of the H&C Agreement evidences a lack of reasonable belief in its legal rights by SEMCO in this case.

Though not thoroughly argued by the parties, we must also address an additional basis for lack of reasonable belief in its legal rights by SEMCO. Whether examined under Louisiana, Michigan or Florida law, it appears that an argument may be made as to the enforceability of the H&C Agreement in light of its lack of express geographical limitation. We find, however, that plaintiff produces no evidence that SEMCO, acting through its attorneys, knew this to be true and disregarded such knowledge in order to harass or intimidate plaintiff. Moreover, SEMCO produces the affidavit of counsel attesting to the bases upon which she relied in rendering professional advice that SEMCO had and/or has a right of action under the H&C Agreement.[56] As cited previously, the threat of legal action is not an instrument of duress unless it is shown that the threatening party lacked a reasonable belief in its right of action, even though it may later be known that no such right of action existed. This is particularly true when the threatening

---

[56] R. 15-3 at pp. 58-61.

party relies, in good faith, upon the advice of counsel. Plaintiff has not offered any evidence that SEMCO or its counsel acted in bad faith in asserting their purported legal rights in this case.

As to plaintiff's second argument that SEMCO has not offered any evidence that plaintiff disclosed confidential SEMCO information in the course of his employment with Truss, we find that the letter at issue did not base its cease and desist instruction wholly on a supposition that plaintiff disclosed confidential information. As pointed out in the letter, SEMCO became aware that plaintiff was

> ...contacting and meeting with dealer/customers to whom he sold product for Gutter Helmet and attempting to induce Gutter Helmet's dealer/customers to purchase Snap-Lock product from Truss.[57]

Plaintiff does not deny that he met with Gutter Helmet customers or that he attempted to induce those customers to stop purchasing Gutter Helmet products and become Snap-Lock customers. The H&C Agreement signed by plaintiff specifically states that plaintiff agreed that he would not undertake such activity during his employment or for a period of six months following his employment.[58] Thus, plaintiff has not demonstrated that SEMCO lacked a reasonable belief that it possessed a right of action against him for such conduct at the time the letter was transmitted to Truss. Accordingly, we find that plaintiff has failed to demonstrate a genuine issue of material fact concerning malice by SEMCO as to any purported LUTPA claim against SEMCO in this case and any such claim must be dismissed with prejudice.

Plaintiff's memorandum in opposition states that plaintiff's suit brings claims for "negligence, fraud, and unfair trade practices[.]"[59] While neither plaintiff, nor defendant raise the issue of general negligence or fraud claims, the court notes, out of an abundance of caution,

---

[57] R. 15-3 at pp. 14-15.
[58] Id. at p. 9.
[59] R. 17 at p. 3.

that plaintiff has presented no argument or evidence in support of such claims. Specifically, plaintiff alleges no facts in support of a finding of negligence under the duty/risk analysis required under La. Civ. C. Art. 2315.[60] Similarly, plaintiff does not address the elements of fraud, though the court notes our prior findings herein as to evidence of malice by SEMCO.[61] To the extent that any such claims are asserted by plaintiff, such claims should also be dismissed with prejudice.

## III. CONCLUSION

As explained in detail above, the court finds that plaintiff's claims against defendant SEMCO fail as a matter of law. Plaintiff lacks standing to bring a claim for the intentional interference with contract and, accordingly, such claim will be dismissed with prejudice. Plaintiff fails to demonstrate malice sufficient to maintain either a claim for intentional interference with business relations or for violation of the LUTPA and, accordingly, plaintiff's LUTPA claims must be dismissed with prejudice. The court finds that plaintiff has failed to properly assert any purported claims for general negligence or fraud and that, for this reason, any such purported claims should be dismissed with prejudice. Finally, plaintiff's failure to properly identify the SEMCO executive named to the suit only as defendant "ABC" results in the prescription of claims as to that defendant, given that plaintiff's suit was filed more than one year ago and alleges wrongful conduct in January of 2010. All claims against this defendant must also be dismissed.

---

[60] Roberts v. Benoit, 605 So.2d 1032 (La. 1991).
[61] La. Civ. C. Art. 1953; Williamson v. Haynes Best Western of Alexandria, 688 So.2d 1201 (La. App. 4 Cir. 1997) citing Transworld Drilling Co. v. Texas General Resources, Inc., 604 So.2d 586, 590 (La. App. 4 Cir. 1992), writs denied 608 So.2d 174 (La. 1992).

In light of these findings, the court concludes that all claims by plaintiff against defendants SEMCO and ABC should be dismissed with prejudice. The court will issue a judgment in conformity with these findings.

**Alexandria, Louisiana**
**August 19, 2011**

JAMES T. TRIMBLE, JR.
U.S. DISTRICT JUDGE